FILED

Aug 01 2023, 8:50 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Valerie K. Boots
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Jenny B. Buchheit
Sean T. Dewey
Alexandria H. Pittman
Ice Miller LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the matter of the Civil Commitment of: <br><br> K.K., <br><br> *Appellant-Respondent,* <br><br> v. <br><br> Community Health Network, Inc., <br><br> *Appellee-Petitioner* | August 1, 2023 <br><br> Court of Appeals Case No. 23A-MH-114 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Steven Eichholtz, Judge <br><br> The Honorable Melanie Kendrick, Magistrate <br><br> Trial Court Cause No. 49D08-2212-MH-43185 |

**Opinion by Judge Vaidik**
Judges Mathias and Pyle concur.

**Vaidik, Judge.**

# Case Summary

K.K. appeals the trial court's order involuntarily committing her to Community Health Network, Inc. ("the Hospital"). In addition to challenging the sufficiency of the evidence, K.K. argues the court erred in allowing her doctor to testify as an expert under Indiana Evidence Rule 702. Her doctor, although still a resident, had graduated medical school and had been treating patients for several months. The trial court determined this was sufficient knowledge and experience to qualify as an expert, and we cannot say this was an error. And because we find there is sufficient evidence to support the involuntary commitment, we affirm.

# Facts and Procedural History

In the early morning hours of December 13, 2022, residents of a home in Marion County called police and reported K.K., whom they did not know, had been standing on their front porch for hours, clothed only in pajamas. Police believed K.K. was displaying "erratic behavior" and took her to the Hospital, where she was admitted. Tr. Vol. II p. 11.

Over the next few days, Dr. Beatrice Thunga, a psychiatry resident at the Hospital, examined K.K. and found her to have a "disorganized thought process" and "disorganized behavior." *Id.* at 12. Specifically, K.K. was "barely talking" and, when she did talk, was "incoherent." *Id.* at 13. When asked

questions, she would not reply and instead produced items, such as a crayon or a piece of paper, but could not explain their significance. Furthermore, she was "unable to express emotions" and did not understand that she had a mental illness or needed to take medication. *Id.* Based on her behavior and prior medical history, including an involuntary commitment earlier that year, doctors at the Hospital diagnosed K.K. with schizoaffective disorder, bipolar type. On December 15, a report was filed with the court requesting temporary involuntary commitment (up to ninety days).

[4] An evidentiary hearing was held on December 20. Dr. Thunga testified that she had recently graduated medical school in May 2022, held a temporary medical license, and was six months into her residency at the Hospital. For four of those months, she had been working in psychiatry, which she identified as the "particular focus of [her] training." *Id.* at 7-8. She primarily worked with adult patients "with various mental disorders of mood, substance use and psychosis." *Id.* at 8. Over K.K.'s objection, the trial court found Dr. Thunga met the qualifications as an expert in psychiatry.

[5] Dr. Thunga testified she had examined K.K. nine times since her admission and confirmed that K.K. had been diagnosed with schizoaffective disorder, bipolar type. Dr. Thunga stated K.K. suffered from "poverty of speech," meaning that K.K. was "barely talking" and often "incoherent" when she did speak. *Id.* at 13. Dr. Thunga expressed that K.K. showed "declining cognition" and was unable to coherently answer questions about her medical care, housing, or basic needs. *Id.* Dr. Thunga also noted that it appeared K.K. was

not showering, had been wearing the same clothes for almost a week, and was not eating. A friend of K.K.'s testified at the hearing and stated he could give her a temporary place to stay should she be released but could not offer any permanent housing and was unwilling to be responsible for her taking prescribed medication or attending medical appointments.

[6] After the hearing, the trial court entered an order of temporary commitment not to exceed ninety days.

[7] K.K. now appeals.[1]

# Discussion and Decision

## I. Expert Testimony

[8] K.K. first argues the trial court erred in allowing Dr. Thunga to testify as an expert witness under Indiana Evidence Rule 702, which provides,

> (a) A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.

---

[1] As K.K. acknowledges, her commitment expired on March 20, 2023. But the Hospital does not argue the appeal should be dismissed as moot. Therefore, we will address the issues raised by K.K.

(b) Expert scientific testimony is admissible only if the court is satisfied that the expert testimony rests upon reliable scientific principles.

"Two requirements must be met for a witness to qualify as an expert." *Totton v. Bukofchan*, 80 N.E.3d 891, 894 (Ind. Ct. App. 2017). "First, the subject matter must be distinctly related to some scientific field, business, or profession beyond the knowledge of the average layperson; and second, the witness must be shown to have sufficient skill, knowledge, or experience in that area so that the opinion will aid the trier of fact." *Id.*

[9] The trial court is considered the gatekeeper for the admissibility of expert opinion evidence under Rule 702. *McDaniel v. Robertson*, 83 N.E.3d 765, 773 (Ind. Ct. App. 2017). A trial court's determination regarding the admissibility of expert testimony under Rule 702 is a matter within its broad discretion and will be reversed only for abuse of that discretion. *Id.* at 772. We presume that the trial court's decision is correct, and the burden is on the party challenging the decision to persuade us that the trial court has abused its discretion. *Id.* at 773.

[10] K.K. argues the Hospital did not show Dr. Thunga had sufficient experience to qualify as an expert. Dr. Thunga completed four years of medical school and held a temporary medical license. She had been through six months of residency, four of which focused on psychiatry. She identified psychiatry as the focus of her training and had experience treating adults with "various mental disorders of mood, substance use and psychosis." And she was K.K.'s treating physician, examining her nine times while she was there. Given this evidence,

and the deference given to trial courts in these circumstances, we cannot say the court erred in determining Dr. Thunga met the qualifications for an expert witness.

## II. Sufficiency of the Evidence

[11] K.K. also argues that even with Dr. Thunga's testimony, the evidence is insufficient to support her involuntary commitment. Civil-commitment proceedings have two purposes—to protect both the public and the rights of the person for whom involuntary commitment is sought. *A.S. v. Ind. Univ. Health Bloomington Hosp.*, 148 N.E.3d 1135, 1138 (Ind. Ct. App. 2020). The liberty interest at stake in a civil-commitment proceeding goes beyond a loss of one's physical freedom because commitment is accompanied by serious stigma and adverse social consequences. *Id.* Accordingly, proceedings for civil commitment are subject to the requirements of the Due Process Clause. *Id.*

[12] To satisfy due process, a person may not be committed without clear and convincing evidence in support. *Id.* at 1139. The clear-and-convincing-evidence standard is "an intermediate standard of proof greater than a preponderance of the evidence and less than proof beyond a reasonable doubt." *B.J. v. Eskenazi Hosp./Midtown CMHC*, 67 N.E.3d 1034, 1038 (Ind. Ct. App. 2016). Under this standard, "we affirm if, considering only the probative evidence and the reasonable inferences supporting it, without weighing evidence or assessing witness credibility, a reasonable trier of fact could find the necessary elements

proven by clear and convincing evidence." *A.S.*, 148 N.E.3d at 1139 (quotation omitted).

[13] To obtain an involuntary commitment, the petitioner is required to prove by clear and convincing evidence that (1) the person is mentally ill and either dangerous or gravely disabled and (2) detention or commitment of the person is appropriate. Ind. Code § 12-26-2-5(e).

## A. Mentally Ill

[14] First, K.K. argues the Hospital did not prove by clear and convincing evidence that she was mentally ill. A mental illness is defined as a psychiatric disorder that substantially disturbs an individual's thinking, feeling, or behavior and impairs the individual's ability to function. I.C. § 12-7-2-130.

[15] Dr. Thunga diagnosed K.K. with schizoaffective disorder, bipolar type. Specifically with K.K., Dr. Thunga testified that this manifests in "poverty of speech," noting K.K. barely talked, and when she did, she was incoherent. Furthermore, Dr. Thunga testified that K.K. was experiencing declining cognition and could not answer questions, express emotion, or understand her medical needs. This is sufficient evidence from which the trial court could have determined K.K. was mentally ill. *See G.Q. v. Branam*, 917 N.E.2d 703, 707 (Ind. Ct. App. 2009) (diagnosis of psychiatric disorder and reports of delusional thoughts sufficient to show mental illness). K.K. offers alternative explanations for this behavior, such as she was protesting her admission to the Hospital, but this is a request to reweigh evidence, which we do not do.

## B. Gravely Disabled

Finally, K.K. argues the Hospital did not prove by clear and convincing evidence that she was gravely disabled. We first note that, while Section 12-26-2-5(e)(1) is disjunctive ("either dangerous or gravely disabled"), the Hospital did not argue at the hearing, nor does it now contend, that K.K. was dangerous. Instead, it argues only that she was gravely disabled. "Gravely disabled" is defined as a condition that causes an individual to (1) be unable to meet their basic food, clothing, and shelter needs or (2) be so obviously impaired in judgment, reasoning, or behavior that such individual cannot function independently. I.C. § 12-7-2-96.

Dr. Thunga's testimony establishes that K.K. was unable to meet her needs. Dr. Thunga testified that in the five days K.K. was hospitalized, she did not appear to be eating, never changed clothes or showered, and would not take prescribed medication. Furthermore, K.K. was experiencing poverty of speech and cognitive decline. At no point in the nine examinations over five days was K.K. able to coherently communicate with Dr. Thunga about her medical needs or housing situation. And while K.K. had a friend who was willing to house her temporarily, he could not commit to housing her long term and was unwilling to take responsibility for any of her medications. Ultimately, K.K.'s inability to communicate, combined with her hygiene, food, and housing issues, supports the trial court's determination that she was gravely disabled. *See T.A. v. Wishard Health Servs., Midtown Cmty. Mental Health Ctr.*, 950 N.E.2d 1266, 1271 (Ind. Ct.

App. 2011) (patient's inability to explain to doctors how to meet her basic needs, including housing, showed she was gravely disabled).

[18] Affirmed.

Mathias, J., and Pyle, J., concur.